UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SEASIDE CIVIC LEAGUE, INC., and DEL MONTE MANOR, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, and SHAUN DONOVAN, in his official capacity as Secretary of United States Department of Housing and Urban Development <br><br> Defendants. | Case No. C-14-1823-RMW <br><br> **ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br> **[Re: Docket No. 3]** |

Plaintiffs Seaside Civic League, Inc. and Del Monte Manor, Inc. (collectively, "DMM") move for a preliminary injunction that would compel defendants United States Department of Housing and Urban Development ("HUD") and Shaun Donovan, Secretary of HUD (collectively, "defendants") to, among other things, advance 5 months of subsidy payments to DMM, allow DMM to hire a HUD approved consultant rather than a HUD approved management company, and respond to FOIA requests. Dkt. No. 11. Plaintiffs' motion is DENIED. The court also notes that federal regulations prohibit Del Monte Manor from raising rents for its Section 8 tenants without prior HUD approval. *See* 24 C.F.R. § 886.112. The court's decision here does not affect this regulation in any way.

## I. BACKGROUND

This case arises out of a dispute between DMM and HUD over subsidies HUD pays to Section 8 housing facilities. DMM is a 192-unit multifamily property in Seaside, California. Dkt. No. 17, Cuellar Decl. ¶ 3. Ninety-eight of DMM's 192 units are eligible for federal assistance under HUD's Section 8 housing program, which is intended to provide subsidized housing to low income individuals. *Id*. The DMM facility has a history of "unsatisfactory" HUD audit reviews beginning in 2005, and in 2009 and 2010 HUD refused to pay more than $700,000 in subsidies due to DMM violations of HUD regulations. *Id*. ¶¶ 4-5. To satisfy HUD, DMM in 2010 hired the John Stewart Company, a HUD-approved management agent, and subsidy payments to DMM resumed. *Id*. ¶ 6. According to HUD, during the John Stewart Company's tenure managing DMM, DMM submissions fully complied with HUD requirements. *Id*. ¶ 8. However, DMM was not satisfied with John Stewart's management, and it allowed the management contract to expire after two years. *Id*. ¶ 9.

When DMM's new property management agent, Dorene Matthews, entered the premises on August 31, 2012, she allegedly found it in a state of disarray, with files scattered everywhere and computers wiped clean of all software and data. Dkt. No. 20-1, Matthews Decl. ¶¶ 3-9. In the meantime, HUD notified DMM of its obligation to hire a HUD-approved management agent and later noted that Ms. Matthews did not meet HUD's requirements. Cuellar Decl. ¶ 10-11. Beginning with Ms. Matthews' tenure as DMM's management agent, HUD alleges that DMM returned to filing documents improperly and keeping poor records. *Id*. ¶¶ 14-15. In June 2013, HUD conducted an onsite inspection of DMM and its files, finding noncompliance in 100 percent of the tenant files it reviewed. *Id*. ¶ 16. DMM attributes these failures to the allegedly disastrous state of records left behind by the John Stewart Company and to HUD's unwillingness to help DMM understand HUD's requirements. Matthews Decl. ¶¶ 37-41.

Starting September 2012, DMM did not receive subsidies from HUD, allegedly leaving it in a precarious financial state because it refused to raise low income tenants' rents—an action that HUD points out that DMM cannot take without prior HUD approval. *Id*. ¶ 68. Communications continued between DMM and HUD through the end of 2013 and into early 2014 without a

resolution, especially as to the dispute over whether DMM would hire a HUD-approved property management agent. DMM on several occasions told its low income tenants that without action by HUD, DMM would be forced to raise rents to market rates, effectively evicting the low income tenants. Cuellar Decl. ¶¶ 21-23.

As communications between DMM and HUD further broke down, DMM filed the instant action on April 21, 2014. In its complaint, DMM alleges seven causes of action: breach of contract, interference with contract, "statutory violations," violation of due process, violation of equal protection, "violation of civil rights," and "abuse of power." Dkt. No. 1, Complaint. Along with its complaint, DMM filed for a temporary restraining order, a preliminary injunction, and a permanent injunction. *See* Dkt. Nos. 2-4. On April 22, 2014, the court denied DMM's application for a temporary restraining order without prejudice. Dkt. No. 10. The next day, DMM re-filed for a temporary restraining order, which the court denied, requiring notice to be given to defendants. Dkt. No. 12. The court now considers DMM's motion for a preliminary injunction. Dkt. No. 3. Defendants oppose, Dkt. No. 16, and DMM filed a reply, Dkt. No. 20. The court held a special hearing on the preliminary injunction on May 19, 2014.

## II. ANALYSIS

Preliminary injunctions are intended to "preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). It is an "extraordinary and drastic remedy," requiring the movant to clearly carry the burden of persuasion. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). A movant must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

The Ninth Circuit has also held that "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). "Serious questions" refers to questions "which cannot be resolved one way or the other at the hearing on the injunction and as to which the court perceives a need to

preserve the status quo lest one side prevent resolution of the questions or execution of any judgment by altering the status quo." *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991).

Because DMM has not met its burden of showing that it would suffer irreparable harm absent a preliminary injunction, and because the public interest weighs against a preliminary injunction, the court DENIES DMM's motion for a preliminary injunction.

**A. Irreparable Harm**

"Under *Winter*, plaintiffs must establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citing *Winter*, 555 U.S. at 22) (emphasis in original). Additionally, "a plaintiff must demonstrate *immediate* threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis omitted and added). DDM alleges that it will suffer irreparable harm because "[b]y withholding payments, HUD has jeopardized DMM's ability to keep the property and low income program solvent." Dkt. No. 3, Motion for Preliminary Injunction, at 6. Indeed, "[t]he threat of being driven out of business is sufficient to establish irreparable harm." *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985); *see also Fin. & Sec. Products Ass'n v. Diebold, Inc.*, No. 04-04347 WHA, 2005 WL 1629813, at *6 (N.D. Cal. July 8, 2005) ("While the threat of being driven out of business would be sufficient to establish irreparable harm, mere loss of revenue is not; such injury would be compensable in damages."). However, "[e]vidence of such a threat must be adequate and must be causally connected to the alleged wrongdoing. For example, in *American Passage Media,* the court held that evidence of past losses and forecasts of future losses, standing alone, were insufficient to show that the company was 'threatened with extinction.'" *Drakes Bay Oyster Co. v. Salazar*, 921 F. Supp. 2d 972, 994 (N.D. Cal. 2013) *aff'd sub nom. Drakes Bay Oyster Co. v. Jewell*, 729 F.3d 967 (9th Cir. 2013) and *aff'd sub nom. Drakes Bay Oyster Co. v. Jewell*, No. 13-15227, 2014 WL 114699 (9th Cir. Jan. 14, 2014) (quoting *Am. Passage Media*, 750 F.2d at 1474).

The court finds that DMM has not satisfied its burden of proof of demonstrating that it would be forced to shut down absent a preliminary injunction. The evidence submitted by DMM here, which first comes in a declaration attached to DMM's reply, is similar to the evidence offered

in *American Passage Media*. Without making any statements as to the immediacy of DMM's financial troubles, Dorene Matthews, the current manager at the Del Monte Manor property, provides a budget spreadsheet showing that DMM suffered losses from July 2013 to January 2014. Dkt. No. 20-1, Matthews Decl. ¶ 92, Ex. 19. This evidence of past losses is insufficient to establish both (1) that DMM is threatened with being driven out of business, and (2) that the threat is sufficiently imminent to warrant preliminary injunctive relief. The principal case DMM cites in support of its motion is *Nat'l Min. Ass'n v. Jackson*, 768 F. Supp. 2d 34 (D.D.C. 2011), but the court in that case denied the plaintiffs' motion for a preliminary injunction for the same reason the court denies DMM's motion here—plaintiffs' failed to prove that absent a preliminary injunction, they would be driven out of business. *Id*. at 50-55. DMM clearly alleges that it suffers continuing losses based on defendants' failure to pay subsidies to which DMM alleges it is entitled, but that sort of harm is remedied by compensatory damages, and is thus not irreparable. *See Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) (lost revenues are "not normally considered irreparable"). Therefore, because DMM has not met its burden of demonstrating that it would likely suffer irreparable harm without a preliminary injunction, DMM is not entitled to a preliminary injunction, and its motion is denied.

### B.  Balance of Equities and Public Interest

The balance of the equities and public interest factors also counsel against granting DMM's motion for a preliminary injunction. "These factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). As to the balance of the equities factor, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 376. As to the public interest, "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id*. at 376-77.

Significantly, courts have held that "there is inherent harm to an agency in preventing it from enforcing regulations that Congress found it in the public interest to direct that agency to develop and enforce." *Cornish v. Dudas*, 540 F. Supp. 2d 61, 65 (D.D.C. 2008) *aff'd sub nom. Cornish v. Doll*, 330 F. App'x 919 (Fed. Cir. 2009); *see also New Motor Vehicle Bd. of California v. Orrin W.*

1   *Fox Co.*, 434 U.S. 1345, 1351 (1977) ("any time a State is enjoined by a court from effectuating

2   statutes enacted by representatives of its people, it suffers a form of irreparable injury"). It appears

3   to the court that the present dispute between the parties has arisen as a result of defendants' attempts

4   to strictly enforce federal regulations and provisions of defendants' contract with DMM regarding,

5   for example, proper recordkeeping and retention of a HUD-approved management company.

6   Although the parties come with widely divergent perspectives on what are apparently generally

7   agreed-upon facts, it is clear that issuance of the injunction DMM requests would at least in part

8   enjoin defendants from enforcing federal regulations. As noted above, this result would run against

9   the public interest.

10   DMM makes two arguments related to the balance of the equities and the public interest

11   factors. First, DMM contends that it is in the public interest to allow it to hire a HUD-approved

12   consultant because it would allow DMM to ensure compliance with its contract and other HUD

13   regulations. However, according to communications between HUD and DMM, the HUD

14   Management Agent Handbook requires properties to hire an approved management company or an

15   individual with particular management experience. Dkt. No. 17, Cuellar Decl. Ex. 3. While DMM

16   apparently does not think this requirement is necessary, DMM concedes that HUD has on multiple

17   occasions stressed that DMM can hire a HUD-approved management agent in accordance with

18   HUD regulations to ensure that DMM complies with other HUD rules. The court therefore defers to

19   the regulatory determinations that the HUD rules, rather than DMM's alternative proposals, serve

20   the public interest.

21   Second, DMM argues that DMM's low income housing program is in the public interest.

22   The court, and no doubt HUD, agrees. But this does not give DMM a blank check to impose its own

23   requirements on HUD or to ignore HUD regulations. As stated above, the legislative and executive

24   branches found that specific regulatory oversight of federal low income housing properties serves

25   the public interest. The HUD regulations that DMM allegedly violates are presumably part of the

26   entire federal program designed to provide a low income housing program that best serves the

27   public interest. At this time the court will not impose DMM or its judgment as to which regulations

28   do or do not further the public interest. Accordingly, the court finds that the balance of the equities

ORDER DENYING PRELIM. INJUNCTION
Case No. C-14-1823-RMW
RDS                                                       - 6 -

and public interest factors favor the defendants, and thus weigh against granting a preliminary injunction.

### III.  ORDER

For the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction is DENIED. As stated at the hearing on May 19, 2014, authorized decisionmakers from both parties are ordered to meet within 30 days of the May 19, 2014 hearing to attempt to resolve this litigation. If the parties are unsuccessful in resolving the case, they are to file a report advising the court of what issues the court could initially address which would facilitate a resolution.

Dated: May 23, 2014



RONALD M. WHYTE
United States District Judge